Robert P. Merino, Jr., Esq. Informal Opinion Corporation Counsel No. 98-1 City of Niagara Falls P. O. Box 69 Niagara Falls, N Y 14302-0069
Dear Mr. Merino:
You have requested an opinion regarding the city's authority to inspect the construction of a proposed school facility. You have advised us that the Niagara Falls School District plans to construct a new school facility as authorized by Chapter 562 of the Laws of 1996. The district plans to lease land from the city and then contract with a private developer who will build and own the school facility on the leased property. The school district will lease the facility from the private developer and operate the school. You ask whether private ownership of the proposed facility will limit the State Education Department's authority to enforce the Uniform Fire Prevention and Building Code ("Uniform Code") with respect to this construction project and whether the city may enforce the Uniform Code or its own code.
Chapter 562 of the Laws of 1996, entitled the "facility alternatives for schools to expedite replacement act", authorizes the construction of new school facilities in the City of Niagara Falls. The statute provides that:
 Notwithstanding the provisions of any other law, general, special or local, relating to the length, duration and terms of contracts the city school district may enter into, the city school district is hereby authorized and empowered to enter into contracts, leases or rental agreements with any person, upon such terms and conditions for such consideration and for such terms or duration, not to exceed thirty years, as may be agreed upon by the city school district, and such person, whereby such person is granted the right to construct, reconstruct, finance or own a school building facility designed with a student capacity of two thousand five hundred.
This statute authorizes the project described above. It also establishes procedures for the award of such contracts and imposes other requirements upon the parties. The statute further provides that "[n]othing in this act shall be construed to exempt a school construction or reconstruction project undertaken pursuant to this act from the review and approval procedures applied to such projects by the education department when undertaken pursuant to the education law". Therefore, it is clear that the project is subject to regulation by the Education Department.
The Department's review and approval requirements are extensive. Education Law § 408 states that no construction, purchase, repair, enlargement or remodeling of a school building at an expense of $100,000 or more or advertisement for bids for such work may take place until the Commissioner of Education has approved the plans and specifications for the work. In a school district in a city having 70,000 or more inhabitants, the commissioner may waive the submission of plans and specifications and review and approve an outline. Id. (In that case the plans and specifications must be approved by the board of education, which is empowered to build, repair, reconstruct, enlarge and remodel school buildings. Id., § 2512[4].) The Education Law provides that the Commissioner shall not approve the plans "unless the same shall provide for heating, ventilation, lighting, sanitation, storm drainage and health, fire and accident protection adequate to maintain healthful, safe and comfortable conditions therein . . .". Id., § 408(2). The Education Law also provides that all school buildings, with exceptions not relevant here, shall comply with the Commissioner's regulations governing heating, lighting, ventilation, sanitation and health, fire and accident protection. Id., § 409(1).
Education Law § 403-b authorizes school districts to lease buildings for use as school facilities. No lease of school facilities may take effect until the Commissioner has approved the lease. Id., § 403-b(1)(c). The Commissioner may not approve the lease until he has determined that the facility meets all applicable standards for the health, safety and comfort of the occupants. Id. Any capital project to be undertaken in a leased building must first be approved by the Commissioner. Id., § 403-b(1)(b).
The Commissioner's regulations governing educational facilities provide, among other things, that plans and specifications for construction projects shall conform to the Uniform Code. 8 NYCRR § 155.2(a)(1)(i). The regulations also state:
 (5) Upon approval of plans and specifications, the commissioner will issue a building permit subject to the following qualifications:
 (i) During construction, the project shall be properly supervised by a licensed architect or engineer.
 (ii) the building permit may be revoked by the commissioner in the event of violations of the State Uniform Fire Prevention and Building Code (9 NYCRR Parts 600 through 1250), this Part or other safety standards imposed by law or regulation.
 (6) Following completion of the project or a substantial portion thereof, the architect or engineer shall certify to the commissioner that the project was completed in conformance to the State Uniform Fire Prevention and Building Code (9 NYCRR Parts 600 through 1250), this Part, and plans and specifications for the project which were previously approved by the commissioner.
Moreover, Executive Law § 381 authorizes the Secretary of State to promulgate rules and regulations pertaining to the administration and enforcement of the Uniform Code. That statute also places responsibility for code enforcement on local governments unless the Secretary's regulations provide otherwise. Id., § 381(2). Those regulations state:
 The State Education Department shall be accountable for administration and enforcement of the Uniform Code with respect to buildings, premises and equipment in the custody of, or activities related thereto undertaken by, school districts and boards of cooperative educational services. 19 NYCRR § 441.2(e).
Thus, the Commissioner is empowered by governing law and regulations to enforce the Uniform Code. The school district has advised us that any contract for construction of the proposed building will provide that the school district will retain licensed architects who will supervise construction in accord with the Commissioner's regulations.
We note that in a prior opinion we concluded that the statutory scheme outlined above leaves localities without authority to regulate school construction, so that a village could not require a school district to connect to the village sewage treatment plant. Op Atty Gen (Inf) No. 83-34. We reasoned that the provisions of the Education Law cited above have reserved to the State the power over the construction of school buildings and that the State's power has been delegated to local school boards subject to regulation by the Commissioner. Accordingly, we found that a school district is not subject to local regulation in those areas controlled by the State. Our opinion relied on Matter of Board ofEducation v. City of Buffalo, 32 A.D.2d 98 (4th Dept 1969). There the court held that the city had no authority to add a provision to its building code that governed the type of new construction that was permitted on school property. It stated that, given the statutory allocation of responsibility for school construction discussed above, "it follows that a school district should be and is immune from the attempted regulation of these rights and responsibilities by means of [local] building codes . . .". Id., 32 A.D.2d at 100. Thus, the city is not authorized to administer or enforce local building codes with respect to school construction projects.
We conclude that the State Education Department retains authority to administer and enforce the Uniform Code with respect to construction of the proposed facility. Chapter 562 expressly provides that the review and approval procedures of the Education Law shall apply to the projects it authorizes. Clearly, while the Legislature intended to authorize more flexibility in school ownership and construction, it did not intend to shift the responsibility for maintaining construction standards.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
SIOBHAN S. CRARY
Assistant Attorney General